Scott W. Breedlove (*pro hac vice*)
sbreedlove@carterarnett.com
Omer Salik (CA SBN 223056)
osalik@carterarnett.com
Eric Chen (CA SBN 296570)
echen@carterarnett.com
Alexis Ritzer (*pro hac vice* forthcoming)
aritzer@carterarnett.com
CARTER ARNETT PLLC
8150 N. Central Expy, Suite 500
Dallas, Texas 75206
214-550-8188 (Telephone)
214-550-8185 (Facsimile)

*Attorneys for Defendants Longhorn IP LLC
and Hamilcar Barca IP LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>LONGHORN IP LLC and HAMILCAR BARCA IP LLC,<br><br>Defendants. | Case No.   5:23-cv-04265-PCP<br><br>**DEFENDANTS' MOTION TO DISMISS COUNTS 1–4 & 6–7**<br><br>DATE:       December 21, 2023<br>TIME:       10:00 a.m. PT<br><br>**[REVISED VERSION OF DOCUMENT, PURSUANT TO JUDGE PITTS' ORDER DKT. 83]** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………..………… iii

MEMORANDUM OF POINTS AND AUTHORITIES …………………………………….. 1

    I.    ISSUES TO BE DECIDED ……………………………………...…………….. 1

    II.    STATEMENT OF FACTS ……………………………………...……………….. 3

        A.  The Collaboration Agreement …………………………………...…….. 4

            1.  Negotiating ▉▉▉▉▉▉▉▉▉▉ (Sections 3.1 and 3.) ….…… 4

            2.  Potentially Executing a License Agreement (Section 3.3) ……...……. 4

            3.  The Standstill Provision (Section 2) ……………………………….. 5

        B.  Hamilcar's Acquisition of the MediaTek Patent Portfolio ……………………….. 5

        C.  The April 12, 2023 Notice Letter ……………………………………………. 7

    III.    LEGAL STANDARD ………………………………………………………………. 7

    IV.    ARGUMENT ……………………………………………………...………….. 8

        A.  The Parties Never Agreed on ▉▉▉▉▉▉▉▉; So Defendants Could Not Have Breached the Collaboration Agreement (Counts 3–4), and TSMC Is Entitled Neither to a License (Count 1) Nor to a Declaration of Non-Infringement (Count 2) . …………………………………………………. 8

            1.  Because the Parties Did Not Agree on ▉▉▉▉▉▉▉ and ▉▉▉▉▉▉▉▉▉▉▉▉▉, LIP Was Not Obligated to License the Patents and Did Not Breach the Collaboration Agreement (Counts 3–4). ……………………………………………...…… 8

            2.  Because the Parties Did Not Agree on ▉▉▉▉▉▉▉, TSMC Is Not Entitled to a License (Count 1) or a Declaration of Non-Infringement (Count 2). ………………………………………..…………. 12

        B.  Defendants Did Not Breach the Standstill Provision Because Longhorn's Notice Letter Was Not Prohibited (Counts 6 and 7) ………………….……. 12

    V.    CONCLUSION ……………………………………………………………….......… 14

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .................................................................................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 7, 8, 14

*Bailey Venture Partners XVI, LLC v. Myall*,
No. 22-CV-05874-SK, 2023 WL 3772026 (N.D. Cal. May 1, 2023) ........................................ 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 7

*Brobeck, Phleger & Harrison v. Telex Corp.*,
602 F.2d 866 (9th Cir. 1979) ................................................................................................. 12

*Bustamante v. Intuit, Inc.*,
141 Cal. App. 4th 199 (Cal. App. 2006) ................................................................................ 11

*Consol. World Investments, Inc. v. Lido Preferred Ltd.*,
9 Cal. App. 4th 373 (1992) ..................................................................................................... 9

*Fayer v. Vaughn*,
649 F.3d 1061, 1064 (9th Cir.2011) ....................................................................................... 8

*Glancy v. Carl Zeiss, Inc.*,
2015 WL 7755995, No 2:15-cv-08265 (C.D. Cal. Nov. 30, 2015) ................................ 8. 13, 14

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
957 F.3d 1038 (9th Cir. 2020) ................................................................................................ 9

*Kadner v. Shields*,
20 Cal. App. 3d 251 (1971) .................................................................................................... 9

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999) .............................................................................................. 13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519, F.3d 1025 (9th Cir. 2008) ............................................................................................... 8

*Oasis W. Realty, LLC v. Goldman*,
51 Cal. 4th 811 (Cal. 2011) ..................................................................................................... 9

*Platt Pacific, Inc. v. Andelson*,
6 Cal. 4th 307 (1993) .............................................................................................................. 9

*Randall v. Change.org, Inc.*,
  2020 WL 7240210, No. 20-cv-03863 (N.D. Cal. Dec. 9, 2020) ................................................... 13

*United States v. Westlands Water Dist.*,
  134 F. Supp. 2d 1111 (E.D. Cal. 2001) ....................................................................................... 13

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ......................................................................................................... 8

*Weisbuch v. Cnty. of L.A.*,
  119 F.3d 778 (9th Cir. 1997) ......................................................................................................... 8

*Woods v. Google, Inc.*,
  889 F. Supp. 2d 1182 (N.D. Cal. 2012) ...................................................................................... 13

**Statutes**

Cal. Civ. Code § 1436 ........................................................................................................................ 9

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on December 21, 2023, at 10:00 a.m. PT, or as soon as the
3  matter may be heard in the Courtroom of the Honorable P. Casey Pitts at the United States District
4  for the Northern District of California, San Jose Courthouse, located at 280 South First Street, San
5  Jose, CA 95113, Defendants Longhorn IP LLC ("Longhorn") and Hamilcar Barca IP LLC
6  ("Hamilcar") (together "Defendants") will and hereby do move to dismiss counts 1–4 and counts
7  6–7 of Plaintiff Taiwan Semiconductor Manufacturing Company Limited's Complaint [Dkt. 1].

8  This motion is based on this notice of motion, motion, accompanying memorandum of
9  points and authorities, the pleadings and other papers on file in this action, and any other argument
10 that the parties may present in this briefing and at the hearing, if any.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     ISSUES TO BE DECIDED

This is a case of non-buyer's remorse. Plaintiff Taiwan Semiconductor Manufacturing Company Ltd. and its affiliates (collectively "TSMC") had an opportunity in 2021 to acquire rights to a MediaTek semiconductor patent portfolio—a portfolio that TSMC apparently now, too late, recognizes was a premium value. Longhorn and its affiliates (collectively "LIP"), including but not limited to Hamilcar, sought to acquire the portfolio from MediaTek and were negotiating with TSMC—■■■■■■■■—for TSMC to ■■■■■■ ■■■■■■. If TSMC and LIP agreed to ■■■■■, and TSMC ■■■■■■■■, TSMC would be entitled to a license later, if LIP were to win the bidding for the MediaTek portfolio. Pennywise TSMC, however, squandered the opportunity. Now, apparently perceiving risk from ongoing unauthorized use of the patented technology, TSMC wants a mulligan.

But the March 2020 Collaboration Agreement was clear. It provided in section 3.2 for ■ ■■■■ for TSMC and LIP to try to ■■■■■ ■■■■■. With LIP's MediaTek opportunity late in 2021, TSMC eventually agreed, or so Longhorn thought, to ■

1   ██████████████████████████. Soon, however, Longhorn discovered that TSMC was willing
2   to ████████████████—planning to withhold ████████████ to pay to the Taiwanese
3   government in taxes. TSMC's position was not well received, of course, since ██████
4   would not be available to LIP to █████████████████████; and █████████████
5   ████████████████████████████████████████████████████████████████████████████
6   ████████████████. Section 3.2 of the Collaboration Agreement confirms the parties were
7   negotiating ████████████████████████████████████████████████████████████████
8   Compl., Ex. A, § 3.2.

9        If TSMC intended this with-strings-attached ████████ from the beginning—which is
10  hard to believe given the express language of section 3.2—then the Complaint and its exhibits
11  confirm there was no meeting of the minds on ████████████ by TSMC. Indeed, after
12  TSMC announced its plan to deduct taxes from █████████████████████████████
13  ████████████████, the negotiations broke down with no agreement reached. So, LIP
14  (specifically Defendant Hamilcar) acquired the MediaTek patents ████████████████
15  ████████.

16       For TSMC, no agreement on ████████████████ meant no █████████████
17  ████████████████, which meant no entitlement to a license after the MediaTek patent
18  portfolio was successfully acquired by Hamilcar. Thus, based on the Complaint and exhibits thereto,
19  TSMC's first four counts should be dismissed with prejudice.

20       TSMC's claims under section 2.1 of the Collaboration Agreement fare no better and, indeed,
21  are hypocritical. Section 2.1 mandates "each Party" refrain from "initiating" any assertions
22  involving the subject patents "in any jurisdiction" during the Standstill Period. TSMC argues that
23  the Standstill Period has not expired. Yet TSMC is then the one that violated the standstill
24  agreement by filing this Complaint "involving" the MediaTek patents.

25       LIP did not initiate, and still has not initiated, an assertion in *any* jurisdiction. As the
26  Complaint confirms, all that Hamilcar did was send a private letter in April 2023 to TSMC (which
27  TSMC misleadingly labels an "Assertion Letter") notifying TSMC of specific TSMC products that
28  embody claims of Hamilcar's patents. By the plain terms of section 2.1 even if the Standstill Period

had not expired, such notice letters were not prohibited. And TSMC's requested injunction—ordering Hamilcar "to stop enforcing the MediaTek Patents against TSMC"—is senseless since Hamilcar has not even begun enforcing them against TSMC.

Counts 6 and 7 should therefore be dismissed. The Complaint confirms that TSMC, not Hamilcar or Longhorn, has violated the terms of Section 2.1 (assuming, *arguendo*, that the Standstill Period has not expired already). Moreover, TSMC's pleading strategy—to assert that the standstill remains in place while, in the "alternative," violating that very standstill to seek preemptive declaratory judgment ("DJ") under the patents—is an abuse of alternative-pleading practice. TSMC's breach of the allegedly unexpired standstill has already caused and will continue to cause LIP harm until the Court has the opportunity to rule on the standstill, because, in the meantime, LIP must defend TSMC's allegedly precluded non-infringement DJ claims ("Alternative" Counts 8–10).

## II. STATEMENT OF FACTS

On March 13, 2020, TSMC and LIP entered into an Intellectual Property Collaboration and Services Agreement, Compl., Ex. A (the "Collaboration Agreement" or "CA"). *See also* Compl. ¶¶ 63–64. LIP specializes in identifying, acquiring, and licensing valuable patent portfolios. The agreement explains that TSMC desired "to collaborate on certain opportunities ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" CA at 1 (first "whereas" clause). The Collaboration Agreement further describes the anticipated benefits to each party: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . . . ." CA at 1 (second "whereas" clause).

TSMC alleges that Longhorn and its affiliate Hamilcar breached the Collaboration Agreement when Hamilcar acquired a patent portfolio from MediaTek, one of the world's largest fabless semiconductor companies, and did not give TSMC a license. But as the Complaint and its exhibits demonstrate, the parties never reached an agreement on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and TSMC therefore did not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the MediaTek patents, leaving TSMC without any rights to the patents after Hamilcar acquired them.

1  A.     **The Collaboration Agreement**

The Collaboration Agreement contemplated that LIP would work to ███████ and then, ████████████████████████ with TSMC ████████ for TSMC to ████████████████████████████████ in order for TSMC to be entitled to a license later, if ██████████████████. *See* CA, § 3; Compl. ¶¶ 69–72. This process would necessarily involve two separate "agreements" for ████████████: an agreement as to █ ████████████, if any, to ████████████████████████████; and later a "license agreement," if ████████████████████. The Collaboration Agreement also included a "standstill" provision that prevented the parties from initiating any proceedings or assertions involving LIP Patents "in any jurisdiction" for a certain amount of time. *See* CA, § 2; Compl. ¶¶ 67–68.

1.   *Negotiating* ████████████████ *(Sections 3.1 and 3.2)*

According to the Collaboration Agreement, LIP was to employ "commercially reasonable efforts to ████████████ to TSMC's ████████████████████████████████." CA, § 3.1; Compl. ¶ 70. After ████████████████████████ "the Parties shall enter into good faith negotiations to determine, within ████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████" CA, § 3.2; Compl. ¶ 71. So, if the parties reached an agreement on ████████████, this agreement would commit TSMC to ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ The Collaboration Agreement also contemplated that if LIP were unsuccessful in ████████████████████████████████████████████, LIP would "promptly ████████████████████████." CA, § 3.4.

2.   *Potentially Executing a License Agreement (Section 3.3)*

The Collaboration Agreement expressly states that only if the parties reach an agreement on ████████████ would TSMC be entitled to a license to a given portfolio: "Should the Parties agree on ████████," and should LIP successfully ████████████████, LIP would ████████████████; and then "the Parties shall execute a license agreement in the

1  form and under the same terms of the Katana License Agreement."[1] CA, § 3.3; Compl. ¶ 72. Thus, to acquire a license ▇▇▇▇, TSMC and LIP would first need to agree on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇; only after that, assuming LIP ▇▇▇▇▇▇▇▇▇▇▇▇, would the parties enter a licensing agreement—similar to the Katana License Agreement—for TSMC to get rights to the patents. Indeed, Section 3.3 of the Collaboration Agreement expressly states that a licensing agreement is required if and only if the parties first "agree on ▇▇▇▇▇▇▇. CA, § 3.3. Thus, the ▇▇▇▇▇▇▇ would necessarily occur only if and after the parties first agreed as to TSMC's ▇▇▇▇▇▇▇▇▇▇▇▇▇.

### 3. The Standstill Provision (Section 2)

Section 2 of the Collaboration Agreement provides that "each Party agrees to forego [sic] initiating ***any proceedings or assertions involving the LIP Patents*** and technology or services that are provided by TSMC including, but not limited to, judicial or administrative proceedings, ***in any jurisdiction*** including, but not limited to, the U.S. District Courts, the Internal [sic] Trade Commission, the U.S. Patent and Trademark Office, the U.S. Customs and Border Protection Agency, and similar judicial or administrative entities worldwide" until March 13, 2023. CA, § 2.1 (emphasis added); *see also* Compl. ¶ 67. In certain circumstances, however, the Standstill Period would be extended "for an additional two (2) years to terminate at midnight Eastern Standard Time on March 13th, 2025." CA, § 2.2; Compl. ¶ 68.

### B. Hamilcar's Acquisition of the MediaTek Patent Portfolio

Performing under the Collaboration Agreement, LIP ▇▇▇▇ a potential patent portfolio owned by MediaTek. Compl. ¶ 75. On November 8, 2021, LIP presented the MediaTek portfolio to TSMC's ▇▇▇▇▇▇▇ and sought to begin negotiations on a ▇▇▇▇▇▇▇ by sending TSMC an "offer term sheet." *Id.* ¶¶ 75–76; Ex. B. Per the

---

[1] The Katana License Agreement was a previous licensing agreement between LIP-affiliate Katana Semiconductor Technologies LLC ("Katana") and TSMC—in which Katana licensed its patents to TSMC in exchange for a "payment" of ▇▇▇▇ less withholding tax. Compl. ¶¶ 59–60; Ex. I at 3–4.

offer sheet, LIP's November 8 offer was for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Compl. ¶ 76; *id.*, Ex. B. TSMC alleges that, soon after, LIP revised its initial offer to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Compl. ¶ 77; *see also* Ex. C. TSMC claims to have "agreed to LIP's November 19, 2023, revised offer." Compl. ¶¶ 78–79; *see also id.*, Ex. D.

Ultimately, though, TSMC (still communicating only through its outside counsel) took the position that LIP would ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. As reflected in subsequent correspondence in February 2022, TSMC had adopted the position that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ was to be withheld to pay Taiwanese taxes ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, while LIP understood from the outset that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Compl. ¶¶ 82–83; *id.*, Exs. M–N. Indeed, in May 2022, TSMC confirmed again—through its outside counsel—that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Compl., Ex. O.

Reaching no agreement with TSMC on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, *see* Compl., Ex. M, Hamilcar purchased the MediaTek Offered Portfolio on December 26, 2021, and announced the purchase on its public website on December 30. Compl. ¶¶ 80-81; Exs. E & F. About five weeks later, on February 1, 2022, TSMC's outside counsel sent LIP an email claiming that TSMC was entitled to a license, though it had neither ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ nor agreed with LIP on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Compl. ¶¶ 82-85; Compl., Exs. M & O. Given the disagreement about ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ LIP responded that same day and expressed surprise at TSMC's position, stating:

> I am surprised and also disagree with your characterization. ***We agreed to*** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ net of foreign taxes. ***Your client (according to you) insisted on withholding foreign taxes*** ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
>
> Let us know if you want to have a call. We are open to revisiting the previous discussion if you changed your mind on withholding foreign taxes ▇▇▇

███.

Compl., Ex. M (emphasis added). LIP sent TSMC's counsel a further email two minutes later stating, "I also vividly remember you saying 'Ok then no deal. I will let my client know' on the call when we clarified our position on our last call." Compl., Ex. N. TSMC's outside counsel did not respond for over two weeks but on February 17, 2022, sent an email denying the "no deal" statement and suggesting they "have a call instead of back-and-forth email exchange." *Id.*

C.  **The April 12, 2023 Notice Letter**

On April 12, 2023, more than a year after Hamilcar acquired the MediaTek patent portfolio, Longhorn sent TSMC a letter notifying it of various TSMC products that appear to embody specified claims in three of Hamilcar's patents. The notice letter included an invitation for TSMC to negotiate a license. Compl., Ex. G; Compl. ¶¶ 89–93. In its Complaint, TSMC labels the letter an "Assertion Letter" and claims that Longhorn sending the letter "qualifies as a prohibited conduct under the Standstill provision." Compl. ¶¶ 89 & 146. TSMC also alleges that it "has performed its obligations under the Agreement, including refraining from violating the Agreement's Standstill provision," Compl. ¶ 144, even though its Complaint in this case initiated a proceeding or assertion "involving the LIP Patents" and TSMC products "in any jurisdiction." *See* CA, § 2.1.

### III.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, a complaint should be dismissed unless it contains factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor does a "legal conclusion couched as a factual allegation" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.

The Court should "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine*

...

1  *Ins. Co.*, 519, F.3d 1025, 1031 (9th Cir. 2008). The Court is not, however, forced to "assume the
2  truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v.*
3  *Vaughn*, 649 F.3d 1061, 1064 (9th Cir.2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618,
4  624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are
5  insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004);
6  *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead [it]self out of court" if it
7  "plead[s] facts which establish that [it] cannot prevail on [its] . . . claim." *Weisbuch v. Cnty. of L.A.*,
8  119 F.3d 778, 783 n.1 (9th Cir. 1997) (cleaned up). For this purpose, the Court may consider
9  exhibits submitted with the Complaint. *Glancy v. Carl Zeiss, Inc.*, No. 2:15-CV-08265-CAS-KS,
10 2015 WL 7755995, at *3 (C.D. Cal. Nov. 30, 2015).

**IV.   ARGUMENT**

**A.   The Parties Never Agreed on ▮▮▮▮▮▮▮▮▮▮; So Defendants Could Not Have Breached the Collaboration Agreement (Counts 3–4), and TSMC Is Entitled Neither to a License (Count 1) Nor to a Declaration of Non-Infringement (Count 2).**

The false precondition on which TSMC's Counts 1–4 rely is that the parties agreed on ▮▮▮▮▮▮▮▮ for TSMC's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮. Taking TSMC's factual allegations (but not implausible inferences) as true, and viewing the evidence attached to the Complaint in the light most favorable to TSMC, it is evident that TSMC and LIP never reached agreement on ▮▮▮▮▮▮▮▮▮▮▮▮—which agreement, had one been reached, would have triggered additional obligations under the Collaboration Agreement. The parties agreeing on ▮▮▮▮▮▮▮▮▮▮ was a required condition for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. And because the parties never agreed on ▮▮▮▮▮▮▮▮▮▮▮▮—as TSMC's own documents show—LIP could not have breached the Collaboration Agreement, and TSMC was never entitled to a patent license.

   1.   *Because the Parties Did Not Agree on* ▮▮▮▮▮▮▮▮▮▮▮▮ *and* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *LIP Was Not Obligated to License the Patents and Did Not Breach the Collaboration Agreement (Counts 3–4).*

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011) (citation omitted). A "plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance." *Consol. World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992). "Similarly, where defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired." *Id.* Put another way, a plaintiff alleging breach of contract must show that all conditions precedent to the allegedly required performance have been satisfied. *See id.* at 380–81.

Under California law, a condition precedent is "one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Cal. Civ. Code § 1436. Specifically, "a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." *Bailey Venture Partners XVI, LLC v. Myall*, No. 22-CV-05874-SK, 2023 WL 3772026, at *6 (N.D. Cal. May 1, 2023) (quoting *Platt Pacific, Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993)). "[W]hen a party has failed to fulfill a condition that was within its power to perform, it is not an excuse that the party did not thereby intend to surrender any rights under the agreement. A contrary conclusion would undermine the law of contracts by vesting in one contracting party the power to unilaterally convert the other contracting party's conditional obligation into an independent, unconditional obligation notwithstanding the terms of the agreement." *Platt*, 6 Cal. 4th at 314 (cleaned up). Simply put, "if a condition precedent to performance fails, the parties still have a contract, but they lose the right to enforce at least some of its terms." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020) (citing *Kadner v. Shields*, 20 Cal. App. 3d 251, 258 (1971)). And while conditions precedent in a contract "must be expressed in plain, clear, and unambiguous language, . . . parties need not invoke any required magical incantation" to render them effective and enforceable. *Id.* (discussing California law) (cleaned up).

Here, subsections 3.2 and 3.3 of the Collaboration Agreement expressly lay out the conditions precedent to either party's further performance:

> 3.2   Upon LIP ███████████████████, *the Parties shall enter into good faith negotiations to determine.* ███████████████

  3.3 **Should the Parties agree on** ▮▮▮▮▮:

    3.3.1 TSMC shall promise to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

    3.3.2 LIP shall, upon ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ receive ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

    3.3.3 LIP shall provide ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the Parties shall execute a license agreement in the form and under the same terms of the Katana License Agreement within ▮▮▮▮▮▮ of TSMC's receipt of ▮▮▮▮▮▮▮▮.

Compl., Ex. A at 3–4.

  Only if and after ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ shall any of the section 3.3 provisions—including the execution of a license agreement under subsection 3.3.3—apply. But as shown by TSMC's documents attached to the Complaint, the parties never reached such ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, since TSMC took the position that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Compl., Ex. O.

  Looking first to the parties' email exchange dated November 23, 2021, *see* Compl., Ex. C, nowhere in the parties' correspondence is ▮▮▮▮▮▮ or any tax withholding or tax-related refund ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ mentioned, discussed, or even suggested. Inasmuch as TSMC proffers the November 23, 2021 email as an "acceptance" of LIP's offer for ▮▮▮▮▮▮▮▮▮▮, there was evidently no meeting of the minds, since the parties disagreed on whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—as TSMC alleges—after a Taiwanese tax is withheld. Indeed, acting in good-faith reliance on TSMC's November 23 email, LIP responded with excitement and noted it had "already communicate[d] with the broker . . . [and was] working on a binding term sheet"—based on the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ to which TSMC appeared to have agreed. *See* Compl., Ex. D.

  As later communications (reflected in the Complaint's exhibits) between the parties show, however, the parties never reached a meeting of the minds on ▮▮▮▮▮▮▮▮▮▮▮▮. In a

1  February 2022 email exchange between LIP and TSMC's attorneys at McKool Smith, *see* Compl.,
2  Ex. N, LIP recounted and described why the "deal" as to ▮▮▮▮▮▮▮▮▮▮ fell apart—
3  despite what LIP understood to be an initial agreement in principle to ▮▮▮. According to the
4  February 2022 emails, LIP "▮▮▮▮▮▮▮▮▮▮▮ . . . **net of foreign taxes**," while TSMC
5  "insisted on withholding foreign taxes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮." *Id.* (emphasis in original). Thus, there was no deal. While TSMC's counsel
7  would not admit to the exact substance of the November 2021 discussions, the mere existence of
8  this February 2022 email exchange proves there was no meeting of the minds on ▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* And as with any purported agreement or
10 contract under California law, absent a meeting of the minds on material points, there is no
11 formation of an enforceable agreement. *See Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215
12 (Cal. App. 2006) ("The failure to reach a meeting of the minds on all material points prevents the
13 formation of a contract even though the parties have orally agreed upon some of the terms, or have
14 taken some action related to the contract.") (cleaned up). As a matter of law, and as shown by the
15 documents attached to the Complaint, the parties never did ▮▮▮▮▮▮▮▮▮▮ which was
16 the condition precedent in section 3.3 of the Collaboration Agreement. Accordingly, Hamilcar had
17 no obligation to give TSMC a license after acquiring the MediaTek patent portfolio.
18      This failure to reach a meeting of the minds on ▮▮▮▮▮▮▮ is further shown
19 by LIP's November 8, 2021 email attaching the initial "offer term sheet" requesting a ▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Compl., Ex. B, and TSMC's May 13, 2022
21 letter, *see* Compl., Ex. O, in which TSMC conceded that its version of ▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In its May 13 letter, TSMC
23 expressly admitted that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮ being returnable to TSMC for remittance to the Taiwan tax
25 authority on LIP's behalf . . . ." Compl., Ex. O. Moreover, LIP's "offer term sheet" from November
26 2021 made no mention of any remittance to Taiwanese tax authorities and only contemplated ▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮. Compl., Ex. B. As the parties evidently never agreed on ▮▮▮▮▮

▉, LIP had no obligation to ▉ ▉ under subsection 3.3.3 of the Collaboration Agreement and, thus, did not breach it.

    2.    *Because the Parties Did Not Agree on ▉, TSMC Is Not Entitled to a License (Count 1) or a Declaration of Non-Infringement (Count 2).*

TSMC's requested declarations in Counts 1 and 2 would require a finding that TSMC and LIP agreed on ▉, thereby triggering an obligation to license. But as shown above (*see supra* § III(A)(1)), the documents attached to the Complaint confirm the parties never reached such agreement. Absent any agreement or meeting of the minds among the parties as to ▉, the parties' respective obligations under Section 3.3 were never triggered. *See* CA, § 3.3 ("▉ . . . ."). Accordingly, TSMC has no legal basis or cognizable claim for declaratory relief under those same provisions and, as a matter of law, was never entitled to a license to Hamilcar's patents. *See* Compl. ¶¶ 110, 116 (claiming an entitlement to a license).

**B.    Defendants Did Not Breach the Standstill Provision Because Longhorn's Notice Letter Was Not Prohibited (Counts 6 and 7).**

Counts 6 and 7 of the Complaint seek specific performance and damages for a purported breach of Section 2 of the Collaboration Agreement (the "Standstill Provision"). Though the Standstill Period, defined in Section 2.2, expired on March 13, 2023, TSMC alleges it was extended by two years. Even assuming, *arguendo*, that this provision did not expire last March, Counts 6 and 7 would still fail because Longhorn sending the April 12, 2023 notice letter ("Letter") was not prohibited. *See* Compl. ¶¶ 146 & 156 (claiming "sending" the Letter was "prohibited conduct"). The Letter did not "initiat[e] any proceedings or assertions . . . in any jurisdiction." CA, § 2.1. TSMC thus fails to state a valid claim for violation of the Standstill Provision.

The Collaboration Agreement provides that California law governs all questions relating to its interpretation. *See* CA, § 5.1. "Under California law, the determination of whether a written contract is ambiguous is a question of law that must be decided by the court." *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979). "When interpreting a contract, the plain language within the four corners of the contract must first be examined to determine the mutual intent of the contracting parties." *United States v. Westlands Water Dist.,* 134 F. Supp. 2d 1111,

1134 (E.D. Cal. 2001). This requires that the "written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." *Id.* at 1135 (quoting *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir. 1999)). Moreover, "a plaintiff's complaint must set forth a 'reasonable interpretation' of the contract at issue" for the plaintiff to survive a Rule 12(b)(6) motion to dismiss. *Glancy v. Carl Zeiss, Inc.*, 2015 WL 7755995, No 2:15-cv-08265 at *4 (C.D. Cal. Nov. 30, 2015); *see Randall v. Change.org, Inc.*, 2020 WL 7240210, No. 20-cv-03863 (N.D. Cal. Dec. 9, 2020) (dismissing with prejudice a breach of contract claim when plaintiff unreasonably attempted to read limitations into the plain meaning of the word "allow"); *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1191-92 (N.D. Cal. 2012) (considering exhibits attached to the complaint under Rule 12(b)(6) and determining they did not show the disputed contract was "reasonably susceptible" to the plaintiff's interpretation).

As a matter of law, Longhorn's transmission of the Letter did not and could not constitute a breach of the Standstill Provision. In context, there is no plausible ambiguity about that provision to support TSMC's position that sending a private letter to TSMC somehow constituted a breach. The plain language of section 2.1 as a whole demonstrates that "initiating any proceedings or assertions" refers to initiating legal actions "in any jurisdiction," not sending private letters. The language surrounding the word "assertions" confirms this meaning. First, "assertions" are things that are *initiated*. *See* CA, § 2.1 (stating "each Party agrees to [forgo] initiating any proceedings or assertions"). Second, "assertions" are things that are initiated "in any jurisdiction"; and the provision gives insightful examples of what a "jurisdiction" is: "U.S. District Courts, the Internal [sic] Trade Commission, the U.S. Patent and Trademark Office, the U.S. Customs and Border Protection Agency, and similar judicial or administrative entities worldwide." CA, § 2.1. A notice letter, sent privately from Longhorn to TSMC, thus bears no resemblance to any "proceedings or assertions" prohibited by section 2.1.[2]

---

[2] TSMC's theory that the mere sending of a notice letter can violate the Standstill Provision puts TSMC in an awkward spot for seeking relief. For example, TSMC alleges that "Defendants can stop enforcing the MediaTek Patents against TSMC," Compl. ¶ 147, and says, "The Court should

Ultimately, "determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Glancy*, 2015 WL 7755995, at *2 (cleaned up, quoting *Iqbal*, 556 U.S. at 679). Common sense confirms the Standstill Provision was about patent assertions in various jurisdictions around the world. And the provision applied not only to Longhorn and Hamilcar, but also to TSMC. It prohibited "each Party" from initiating any proceedings "involving the LIP Patents and technology or services that are provided by TSMC." Yet in this very TSMC-*initiated* lawsuit where it alleges the standstill remains in place, TSMC has brought (albeit in the "alternative") Counts 8, 9, and 10 that involve Hamilcar's patents and TSMC's products.[3]

TSMC's allegations of a breach of the Standstill Provision rely on nothing more than Longhorn sending the Letter. Thus, TSMC has failed to state a plausible claim under that section 2.1 of the Collaboration Agreement, and Counts 6 and 7 should be dismissed.

### V.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted, and counts 1–4 and 6–7 of the Complaint should be dismissed without leave to amend.

---

order Defendants to stop enforcing the MediaTek Patents [i.e., Hamilcar's patents] against TSMC," *id.* ¶ 149. But what is there to "stop"? Can TSMC be un-notified that its products are using Hamilcar's patents? Of course not. But when a party initiates a legal action—like TSMC initiated this lawsuit—the action can be dismissed or otherwise stopped. It is these kinds of "assertions"—actions that are "initiated" in a "jurisdiction"—that are addressed by the Standstill Provision. TSMC's overly broad interpretation of "assertion" is not reasonable.

[3] Apparently recognizing the weakness of its theory that the Standstill Period was extended by two years, TSMC seeks a non-infringement declaratory judgment "[t]o the extent the Court holds the Standstill provision is not still in place." Compl. ¶¶ 165, 171, & 177.

Dated: October 30, 2023

CARTER ARNETT PLLC

By: /s/ Scott W. Breedlove
Scott W. Breedlove (*pro hac vice*)
sbreedlove@carterarnett.com
Omer Salik (CA SBN 223056)
osalik@carterarnett.com
Eric B. Chen (CA SBN 296570)
echen@carterarnett.com
Alexis Ritzer (*pro hac vice* forthcoming)
aritzer@carterarnett.com
CARTER ARNETT PLLC
8150 N. Central Expy, Suite 500
Dallas, Texas 75206
214-550-8188 (Telephone)
214-550-8185 (Facsimile)

*Attorneys for Defendants Longhorn IP LLC and Hamilcar Barca IP LLC*