UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>LONGHORN IP LLC, et al.,<br><br>    Defendants. | Case No. 23-cv-04265-PCP<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 90 |

In this contract dispute, plaintiff Taiwan Semiconductor Manufacturing Company ("TSMC") brings claims against defendants Longhorn IP LLC and Hamilcar Barca IP LLC arising out of a patent acquisition agreement between the parties. TSMC seeks declaratory relief, specific performance, and damages to recover on a license allegedly owed under that agreement and for defendants' breach of a standstill provision. Alternatively, TSMC seeks a declaration of non-infringement of certain patents-at-issue.

Defendants move to dismiss plaintiffs' entitlement-to-license claims (counts 1–4) and breach-of-standstill claims (counts 6–7) under Rule 12(b)(6), contending that these counts in TSMC's complaint fail to state valid causes of action. For the following reasons, the Court denies defendants' motion to dismiss.

## BACKGROUND[1]

TSMC is a Taiwanese company that describes itself as "the world's largest semiconductor company by market cap." Dkt. No. 85-4, Compl. ¶¶ 14–15. Defendant Longhorn IP LLC (LIP) is a limited liability company incorporated and headquartered in Texas that describes itself as a

---

[1] For purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the allegations in TSMC's complaint.

"major player in the Intellectual Property world." *Id.* ¶¶ 20, 39. Hamilcar is also a limited liability company incorporated and headquartered in Texas. *Id.* ¶ 24. LIP Founder, CEO, and President Mr. Fekih-Romdhane is Hamilcar's sole member according to TSMC. *Id.* ¶ 25. On information and belief, TSMC asserts that LIP and its affiliates engage in a "patent acquisition, licensing, and assertion scheme run and managed by Mr. Fekih-Romdhane." *Id.* ¶¶ 39–40.

TSMC's complaint alleges that in December 2019, LIP's portfolio company Katana Silicon Technologies LLC commenced a patent infringement suit against TSMC in the Western District of Texas. Compl. ¶ 57. In early 2020, TSMC, Katana, and another LIP affiliate, Carthage Silicon Innovations LLC, agreed to a term sheet. *Id.* ¶ 58. Subsequently, TSMC, Katana, and subsidiaries of each entered into a licensing agreement. *Id.* ¶ 59. Per the terms of that license agreement, TSMC agreed to pay Katana a specified amount that was subject to "a 20% income tax that [would] be withheld on the payment by TSMC." *Id.* ¶ 60.[2] TSMC entered into a similar licensing agreement with Carthage that included the same tax withholding provision. *Id.* Mr. Fekih-Romdhane signed these agreements on behalf of Katana and Carthage, respectively. *Id.* ¶ 61.

In March 2020, pursuant to the earlier term sheet, TSMC, LIP, and their respective affiliates entered into the contract at issue in this case, memorializing an agreement to collaborate on acquiring patents of mutual interest to the parties. Compl. ¶ 63; Dkt. No. 85-5, Intellectual Property Collaboration and Services Agreement ("Agreement").

Section 2 of the Agreement includes a standstill provision requiring the parties, including their affiliates, to "forego initiating any proceedings or assertions" involving certain patents, technology, or services provided by TSMC. That provision states in full:

---

[2] *See* Compl. ¶ 60. ("Katana will be responsible for any duties, taxes, and levies resulting from the payment hereunder including a 20% income tax that will be withheld on the payment by TSMC under this Agreement ('**Withholding Tax**'). TSMC will deduct such Withholding Tax from the payment and remit such Withholding Tax to the relevant taxing authority. … For avoidance of doubt, the actual payments to Katana will be net of any taxes withheld.").

2

2. STANDSTILL

2.1 During the Standstill Period (defined below), each Party agrees to forego initiating any proceedings or assertions involving the LIP Patents and technology or services that are provided by TSMC including, but not limited to, judicial or administrative proceedings, in any jurisdiction including, but not limited to, the U.S. District Courts, the Internal Trade Commission, the U.S. Patent and Trademark Office, the U.S. Customs and Border Protection Agency, and similar judicial or administrative entities worldwide. The Standstill Period starts on the Effective Date and terminates three (3) years from the Effective Date at midnight Eastern Standard Time on March 13th, 2023. For purposes of this Agreement, the Parties further agree to toll the running of any applicable statute of limitations on any claim or cause of action involving the LIP Patents which the Parties have or may have against one another, whether known or unknown, that are based upon any law, statute, rule, or regulation, or any rule or regulation of any governing body or organization, including but not limited to any patent infringement action or invalidity proceeding that could be filed under the laws of the United States during the Standstill Period.

2.2 If the Parties agree to the Contribution ( defined below) and seek to close on 50% or more of the Offered Portfolios presented by LIP to TSMC or if LIP fails to present at least two (2) Offered Portfolios during the initial Standstill Period of three (3) years, the Parties agree to extend the Standstill Period for an additional two (2) years to terminate at midnight Eastern Standard Time on March 13th, 2025.

Agreement § 2.

The Agreement also includes provisions related to "Intellectual Property Collaboration" laying out three primary conditions that, when satisfied, entitle TSMC to a license to patents:

3.1 LIP represents, warrants, and agrees that it will employ commercially reasonable efforts to identify and present to TSMC's designated outside counsel Offered Portfolios.

3.2 Upon LIP presenting an Offered Portfolio, the Parties shall enter into good faith negotiations to determine, within thirty (30) days, TSMC's interest and TSMC's contribution amount for LIP to bid and compete with other potential buyers interested in purchasing the Offered Portfolio (the "Contribution").

3.3 Should the Parties agree on the Contribution:

3.3.1 TSMC shall promise to pay the Contribution if LIP acquires all of the Patents in the Offered Portfolio;

3.3.2 LIP shall, upon purchase of the Offered Portfolio, receive sole right, title and ownership of the Patents within the Offered Portfolio;

3.3.3 LIP shall provide written notice to TSMC of the execution of the patent purchase agreement for the Offered

> Portfolio and the Parties shall execute a license agreement in the form and under the same terms of the Katana License Agreement within seven (7) days of TSMC's receipt of such written notice.

Agreement § 3.

The Agreement further specifies: "Should the Parties have agreed to the Contribution and seek to close fewer than 50% of the Offered Opportunities at the end of the initial Standstill Period at midnight Eastern Standard Time on March 13th, 2023, each Party reserves the right to terminate this Agreement." Agreement § 3.6. In relevant part, the Agreement also includes a choice of law and forum-selection clause, whereby the parties agree that California provides the governing law and that any disputes will be brought in federal or state court in Santa Clara County. *Id.* § 5.1.

On November 8, 2021, LIP brought to TSMC certain patents belonging to MediaTek, another semiconductor company, and sought a contribution for LIP's acquisition of those patents. Compl. ¶ 75. LIP sent an email to TSMC with a term sheet pursuant to the Agreement asking for a fixed sum "in a single lump sum payment" and requesting that TSMC "notify LIP by end November 23, 2021 (CST), if TSMC wishes to make the Contribution." *Id.* ¶ 76. LIP stated further that "[i]f TSMC opts to make the Contribution, LIP shall provide written notice to TSMC upon execution of the patent purchase agreement," and "[u]pon receiving the written notice, TSMC and LIP shall execute a license agreement within seven (7) days for the Offered Portfolio." *Id.*

On November 19, 2021, LIP presented TSMC with a revised offer: "a TSMC Contribution of [the fixed sum] …in exchange for a license to the Offered Portfolio and the transfer (at LIP's election) of one of the Offered Portfolio patent families to TSMC." Compl. ¶ 77. TSMC alleges that on November 23, 2021, TSMC accepted that offer. *Id.* ¶ 78. Later that same day, Mr. Fekih-Romdhane responded to the email on behalf of LIP, stating: "This is exciting. We already communicate[d] with the broker and we are working on a binding term sheet. We will let u know [a]bout the progress ASAP." *Id.* ¶ 79.

On December 26, 2021, LIP, through Hamilcar, acquired a portfolio of patents from MediaTek. Compl. ¶¶ 80–81. On February 1, 2022, after learning about the acquisition, TSMC sent an email to LIP asking it to "send over a copy of the definitive agreements related to purchase of the Offered Portfolio/MediaTek patents and drafts of paperwork required so that we can process

4

TSMC's payment of [the fixed sum] to LIP and close the Contribution." *Id.* ¶ 82. Mr. Fekih-Romdhane responded to the email disputing that the parties reached agreement on the contribution, stating:

> We agreed to a contribution of [the fixed sum] … net of foreign taxes. Your client (according to you) insisted on withholding foreign taxes on that contribution, which will result in a [20%] loss on the acquisition end.

*Id.* ¶ 83.

On February 17, 2022, TSMC disputed Mr. Fekih-Romdhane's characterization of their last call and asserted that "[t]he contribution agreed to by TSMC and LIP is clear from our communications and is not 'net of foreign taxes' as you suggested." Compl. ¶ 84. On May 13, 2022, TSMC sent a letter to LIP informing it that "TSMC stands ready to proceed with payment of the Contribution" and "placed [the fixed sum] in a Depository Account with Citibank." *Id.* ¶ 85. LIP did not provide TSMC with a license agreement. *Id.* ¶ 86.

In April 2023, Mr. Fekih-Romdhane sent TSMC a letter on behalf of LIP and Hamilcar identifying three of Hamilcar's patents acquired from MediaTek in December 2021. Compl. ¶¶ 89, 92. The letter notified TSMC it may be infringing and inducing infringement of methods claimed in these patents. *Id.* ¶¶ 90–92. LIP and Hamilcar offered to provide TSMC with claim charts "if TSMC entered into a 'confidentiality agreement'" confirming that "the information will be treated as privileged settlement information under Fed. R. Evid. 408." *Id.* ¶ 93.

TSMC responded to that letter on May 16, 2023, stating:

> Taiwan Semiconductor Manufacturing Company Limited ("TSMC") and Longhorn IP LLC ("LIP") entered into the Intellectual Property Collaboration and Services Agreement on March 13, 2020 (the "Agreement") (attached). Under the terms of the Agreement, LIP agreed to employ commercially reasonable efforts to identify and present patents of interest to TSMC and engage in good faith negotiations to determine TSMC's interest in and contribution amount to acquire any offered portfolios. If the parties agreed on TSMC's contribution amount for a portfolio and LIP acquired the portfolio, then the Agreement required LIP to execute a license with TSMC in the form and under the same terms of the Patent License and Settlement Agreement between Katana Semiconductor Technologies LLC and TSMC (the "Katana License").

Compl. ¶ 94.

1       On June 28, 2023, LIP replied to TSMC's response arguing that the parties never reached

2  agreement on a contribution amount and again asking TSMC to enter into a confidentiality

3  agreement for purposes of sharing claim charts. Compl. ¶ 95.

4       On these facts, TSMC commenced this action alleging breach of contract and seeking

5  declaratory relief, specific performance, and damages under the Agreement. In the alternative,

6  TSMC seeks declarations of non-infringement with respect to the patents-at-issue. The defendants

7  now move to dismiss counts 1–4 and 6–7 of the complaint pursuant to Federal Rule of Civil

8  Procedure 12(b)(6), contending that TSMC fails to state a cause of action for breach of contract

9  under any of these counts.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. Dismissal is proper where the complaint does not state a plausible claim upon which relief can be granted. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions "can provide the framework of a complaint" but "must be supported by factual allegations." *Id.* at 679. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009).

## ANALYSIS

At their core, counts 1–4 and 6–7 all contend that LIC and Hamilcar breached their contractual obligations to TSMC under the Agreement. Under California law, the elements for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

### I.    Counts 1–4 Plausibly Allege Claims for Entitlement to a License.

LIC and Hamilcar first seek to dismiss Counts 1–4 on the ground that TSMC is unable to establish that the parties reached agreement on the contribution amount pursuant to Section 3 of the Agreement and therefore cannot state a viable claim entitling it to a license thereunder. TSMC

1  responds that the terms of the parties' Agreement required the withholding of taxes from any
2  contribution amount and the parties therefore reached a mutual meeting of the minds with respect
3  to TSMC's contribution when TSMC accepted defendants' November 23, 2021 offer. The parties'
4  dispute therefore ultimately turns upon the meaning of their contractual agreement. If TSMC is
5  correct, then an agreement was reached on November 23, 2021. If not, there was no agreement.

6        The nature of the parties' dispute bears on the scope of the Court's powers on a motion to
7  dismiss. A contract "must be so interpreted as to give effect to the mutual intention of the parties
8  as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ.
9  Code § 1636. "Where contract language is clear and explicit and does not lead to absurd results,
10 we ascertain intent from the written terms and go no further." *Ticor Title Ins. Co. v. Emp. Ins. of*
11 *Wausau*, 40 Cal. App. 4th 1699, 1707 (1995). In that circumstance, a court "may resolve
12 contractual claims on a motion to dismiss because the terms of the contract are unambiguous."
13 *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 908 (N.D. Cal. 2020) (cleaned up). What the parties
14 "intended by an ambiguous contract," however, "is a factual determination." *Id.* (citing *Untied*
15 *States v. Plummer*, 941 F.2d 799, 803 (9th Cir. 1991)). "Where the language leaves doubt as to the
16 parties' intent, the motion to dismiss must be denied." *Monaco v. Bear Stearns Residential Mortg.*
17 *Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (cleaned up).

18       A contract is ambiguous where "reasonable people could find its terms susceptible to more
19 than one interpretation." *Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005). Here,
20 TSMC and the defendants have each proffered reasonable interpretations of the disputed term. The
21 Agreement defines "Contribution" in subsection 3.2 of the Agreement as "TSMC's contribution
22 amount for LIP to bid and compete with other potential buyers interested in purchasing the
23 Offered Portfolio (the 'Contribution')." The parties here both agree on the total amount at issue.
24 *See* Compl. ¶¶ 75–78. The disputed question is whether, in the context of the Agreement and the
25 circumstances of this case, that amount was subject to tax withholding.

26       TSMC argues that the parties understood that the contribution amount would be subject to
27 tax withholding considering the Agreement's acknowledgement under subsection 3.3.3 that "the
28 Parties shall execute a license agreement in the form and under the same terms of the Katana

1  License Agreement," which included a tax withholding provision. On that ground, TSMC argues,
2  the parties had a meeting of the minds on the contribution amount when they agreed to the fixed
3  sum.

4  By contrast, defendants argue that the fixed sum contribution must be net of tax
5  withholding because TSMC's interpretation effectively reduces that amount to by 20%. On that
6  ground, defendants assert, the parties never had a meeting of the minds and could not have reached
7  agreement on a contribution that would trigger any further obligations under Section 3.
8  Defendants argue further that the parties' email exchange "proves" that "there was no meeting of
9  the minds on the Contribution Amount" and thus "there was no deal." Dkt. No. 85-18, at 15–16.
10 "According to the February 2022 emails," defendants emphasize, "LIP 'agreed to a contribution of
11 [the fixed sum] … **net of foreign taxes**,' while TSMC 'insisted on withholding foreign taxes on
12 that contribution, which [would] result in a [20%] loss on the acquisition end.'" *Id.* at 16.

13 Considering the Agreement as a whole and in the context in which the disputed term was
14 negotiated, the Court finds that TSMC and the defendants each provide reasonable interpretations
15 and the language at a minimum "leaves doubt as to the parties' intent." *Monaco*, 554 F. Supp. 2d
16 at 1040. What the parties' specific intent was and whether the parties in fact had a meeting of the
17 minds are factual matters not appropriate for resolution on a motion to dismiss. Because TSMC
18 has sufficiently pleaded a cause of action for breach of contract entitling it to a license under the
19 Agreement, the Court denies the defendants' motion to dismiss claims 1–4.

20 **II.    Counts 6–7 Plausibly Allege Claims for Breach of the Agreement's Standstill Provision.**
21

22 LIC and Hamilcar seek to dismiss counts 6–7 on the ground that defendants' April 2023
23 letter is not an "assertion" that would violate the plain terms of Section 2.1's standstill provision.

24 Here too, TSMC and the defendants each proffer reasonable interpretations of the disputed
25 standstill provision. That provision provides that during the identified standstill period:

26 > [E]ach Party agrees to forego initiating any proceedings or assertions
27 > involving the LIP Patents and technology or services that are provided
> by TSMC including, but not limited to, judicial or administrative
> proceedings, in any jurisdiction including, but not limited to, the U.S.
28 > District Courts, the Internal Trade Commission, the U.S. Patent and

United States District Court
Northern District of California

> Trademark Office, the U.S. Customs and Border Protection Agency, and similar judicial or administrative entities worldwide.

Agreement § 2.1.

The parties primarily dispute the contractual meaning of "assertions" and whether defendants' April 2023 letter amounted to an "assertion" under that provision. (The parties agree that the letter does not constitute a "proceeding".) TSMC argues that the plain and ordinary meaning of "assertion" along with its established meaning in the patent context "bars assertive conduct" like the letter at issue "that may precede a judicial proceeding." Dkt. No. 85-19, at 22–25. According to TSMC, the defendants' contention that the prohibited "assertion" is limited to in-court or judicial proceedings is not only illogical but would also render "assertion" superfluous and contravene the express purpose of the Agreement. *See id.* at 23–24.

By contrast, the defendants interpret the language "initiating any proceedings or assertions" as only "refer[ring] to initiating legal actions … 'in any jurisdiction.'" Dkt. No. 85-18, at 18. Because sending a "private letter" is not a legal action initiated in a particular jurisdiction, which they argue is required by the provision, their letter did not violate its terms. *See id.* The defendants contend that their April 2023 amounts only to a "notice letter, sent privately from Longhorn to TSMC," which "bears no resemblance to 'any proceedings or assertions'" prohibited under the provision. *Id.*

Contrary to defendants' assertion, the scope of conduct prohibited under this provision is not so clear and unambiguous as to be susceptible to resolution on a Rule 12(b)(6) motion. The Court need only conclude at this stage that "reasonable people could find its terms susceptible to more than one interpretation." *Tanadgusix*, 404 F.3d at 1205. TSMC's and defendants' respective interpretations leave sufficient "doubt as to the parties' intent" with respect to what conduct violates the standstill provision. *Monaco*, 554 F. Supp. 2d at 1040. For the same reason stated above, the parties' specific intent with respect to this provision presents a factual matter not appropriate for resolution on a motion to dismiss.

Because TSMC has sufficiently pleaded a cause of action for breach of this provision of the Agreement, the Court denies the defendants' motion to dismiss claims 6–7.

**CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss claims 1–4 and 6–7 is denied.

**IT IS SO ORDERED.**

Dated: June 14, 2024

_____
P. Casey Pitts
United States District Judge